674 A.2d 262

**Joseph DOUGHERTY**

**v.**

**CONDUIT & FOUNDATION CORPORATION d/b/a McCollum General Services Company, Appellant.**

Superior Court of Pennsylvania.

Argued Feb. 6, 1996.

Filed March 26, 1996.

406

William G. Downey, Philadelphia, for appellant.

Gary C. Martin, Horsham, for appellee.

Before CIRILLO, President Judge Emeritus, and BECK, J. and CERCONE, President Judge Emeritus.

CIRILLO, President Judge Emeritus:

This is an appeal from a judgment denying Conduit & Foundation Corporation's post-verdict motions and entering judgment for Joseph Dougherty in the amount of $250,908.49. We reverse.

Joseph Dougherty instituted a negligence action against Conduit & Foundation Corporation (Conduit) after being injured while performing work for his employer, Ponns & Thomas. Conduit had been hired, as a general contractor, to renovate train tracks and platforms for Amtrak at Philadelphia's 30th Street Station. Conduit had subcontracted with Ponns & Thomas to perform the painting portion of the station's renovation. While descending a staircase at the train station, Dougherty allegedly tripped over a 2 × 4 piece of

lumber placed on the top step and fell, sustaining injuries to his knee, lower back, shoulder, and upper back/neck area.

At the close of Dougherty's case, Conduit moved for a directed verdict which was denied by the court. The trial court subsequently entered a verdict against Conduit in the amount of $400,000.00 and found Dougherty 40% contributorily negligent. Dougherty filed a motion for post-trial relief requesting a directed verdict, or, in the alternative, a new trial. After post-verdict motions were denied, Dougherty filed a motion for delay damages which was granted in the amount of $10,908.49. Conduit now appeals and raises the following issues for our review:

(1) Whether Conduit is entitled to judgment as a matter of law as Conduit was the statutory employer of Joseph Dougherty and therefore immune from suit;

(2) Whether Conduit is entitled to judgment as a matter of law as the alleged hazard was open and obvious so that the defendant, Conduit & Foundation, owed no duty to the plaintiff;

(3) Whether Conduit is entitled to judgment as a matter of law on the basis that the plaintiff, Joseph Dougherty, assumed the risk of his injuries;

(4) Whether Conduit is entitled to judgment as a matter of law as there is no credible evidence to support the finding that the defendant was more negligent than the plaintiff;

(5) Whether the court committed reversible error by refusing to allow the defendant to question the plaintiff concerning the plaintiff's spoilization of the alleged paint splattered clothing and why he obtained an attorney the day following the accident?

Our appellate standard of review of an order denying judgment notwithstanding the verdict is whether there was sufficient competent evidence to sustain the verdict. *Wenrick v. Schloemann–Siemag Aktiengesellschaft, et al.*, 523

Pa. 1, 4, 564 A.2d 1244, 1246 (1989). The standard of review for an appellate court is the same as that for a trial court: j.n.o.v. will be entered only in a clear case where the facts are such that no two reasonable minds could fail to agree that the verdict was improper. *Pirozzi v. Penske–Olds–Cadillac–GMC*, 413 Pa.Super. 308, 311–12, 605 A.2d 373, 375 (1992) (citation omitted). An appellate court will reverse a trial court ruling only if it finds an abuse of discretion or an error of law that controlled the outcome of the case. *Timbrook v. Foremost Ins. Co.*, 324 Pa.Super. 384, 387, 471 A.2d 891, 892 (1984).

 Section 52 of the Pennsylvania Workmen's Compensation Act sets forth the basis for the doctrine of "statutory employer." 77 P.S. § 52. The statute defines this term as:

An employer who permits the entry upon premises occupied by him or under his control of a laborer or an assistant hired by an employe or contractor, for the performance upon such premises of a part of the employer's regular business entrusted to such employe or contractor, shall be liable to such laborer or assistant in the same manner and to the same extent as to his own employe.

77 P.S. § 52. Our supreme court recognized that this doctrine will not apply to cases unless five specific elements have been met. *McDonald v. Levinson Steel Co.*, 302 Pa. 287, 153 A. 424 (1930). The elements necessary to create this employment relationship are:

(1) An employer [Conduit] who is under contract with an owner [Amtrak] or one in the position of an owner.

(2) Premises occupied by or under the control of such employer [Conduit].

(3) A subcontract made by such employer [Conduit].

(4) Part of the employer's [Conduit's] regular business entrusted to such subcontractor [Ponns & Thomas].

(5) An employee [Dougherty] of such subcontractor [Ponns & Thomas].

*Id.* These elements have been strictly construed by our appellate courts. *Mathis v. United Eng'rs & Constructors*, 381 Pa.Super. 466, 554 A.2d 96 (1989). The intent behind the doctrine of statutory employer is "to hold a general contractor secondarily liable for injuries to the employees of a subcontractor, where the subcontractor primarily liable has failed to secure benefits with insurance or self-insurance." *Caldarelli v. Mastromonaco*, 115 Pa.Cmwlth. 611, 542 A.2d 181 (1988).

The trial court opined that Conduit should not be considered a "statutory employer" because it did not meet elements two and four of the *McDonald* test. The record, however, belies such a conclusion.

Section 3.01 of the Amtrak–Conduit contract states:

The Contractor [Conduit] shall supervise and direct the Work, using his best skill and attention. He shall be solely responsible for all construction means, methods, techniques, sequences and procedures and for coordinating **all portions of the Work prescribed by the *Contract Documents.***

The contract defines the term "Contract Documents" to include, in part:

The Purchase Order; the basic instrument of agreement between Amtrak and the Contractor signed by Amtrak and the Contractor and returned to Amtrak.

The Bid Form; Standard Amtrak form completely filled out and signed by the Contractor.

The record reveals that on September 20, 1989, an "Original Purchase Order," sent by Conduit to Amtrak, was signed by an authorized Amtrak employee/agent. The order form lists work items and their corresponding prices, as well as a total dollar limitation for the contract between the parties. Most important, however, is that item number 2 on the form list includes "Construction of new canopy, structural repairs, **painting**" as jobs to be performed under the contract. Additionally, a "Bid Schedule," included in the record on appeal,

reflects that painting is one of the items to be performed for the Amtrak renovation work.

"Whenever the subcontracted work [is] an obligation assumed by a principal contractor under his contract with the owner," element four is met. *O'Boyle v. J.C.A. Corporation*, 372 Pa.Super. 1, 4, 538 A.2d 915, 917 (1988) (citations omitted). A worker injured on such subcontracted work is not entitled to compensation from the contractor as a statutory employer unless the original contract with the premises owner reserves control over the means of accomplishing the work as well as over the result to be accomplished. *McDonald, supra.* The language of the two contract documents, namely the purchase order and the bid form, clearly specify that painting is one of the obligations which the contractor assumed under its contract with Amtrak, the owner of 30th Street. Therefore, we disagree with the trial court, and find that prong four of the statutory employer elements is met in the instant case. *O'Boyle, supra; see also Zizza v. Dresher Mechanical Contractors, Inc.*, 358 Pa.Super. 600, 518 A.2d 302 (1986) (trial court's grant of contractor's motion for summary judgment affirmed on appeal when contractor, who signed general contract with owner to perform excavation work, was held to be a statutory employer, and thus immune from an action at law for damages, as work that was subject of subcontractor award was part of contractor's regular business). *Cf. Caldarelli v. Workmen's Compensation Appeal Bd.*, 115 Pa.Commw. 611, 542 A.2d 181 (1988) (where premises owner was constructing house and contracted with the painter for some of the painting work, the painter was an independent contractor, and the owner was not a statutory employer subject to worker's compensation liability as to independent contractor's injured employee; owner, however, was subject to action by the employee at common law); *Stipanovich v. Westinghouse Electric Corp.*, 210 Pa.Super. 98, 231 A.2d 894 (1967) (when employee of third party, hired by defendant, was injured moving equipment at laboratory owned by the United States, defendant-company who contracted with premises owner was not held to be a "statutory employer" because it was never

established that company was obligated by contract to perform the activity in which employee was engaged at the time of the accident).

Because all five of the *McDonald* elements must apply to an entity before statutory employer status will attach, we must also determine whether prong two was fulfilled with regard to the instant case. Prong two of the *McDonald* test requires that the premises be under the control of or occupied by the employer. Courts read the language in prong two in a strictly disjunctive manner. *Davis v. City of Philadelphia,* 153 Pa.Super. 645, 35 A.2d 77 (1943). Therefore, an employer will satisfy this element if he either is in control of the premises *or* occupies the premises. *Zizza, supra.*

"The law does not require that a statutory employer's control of the work premises be 'exclusive' of the owner's possession of the premises." *Colloi v. Philadelphia Elec. Co.,* 332 Pa.Super. 284, 481 A.2d 616 (1984) (citations omitted). *Actual* control must be demonstrated by the employer; a mere showing of a *right* to control is insufficient for purposes of meeting element two of *McDonald. Donaldson v. Commonwealth, Dept. of Transp.* 141 Pa.Commw. 474, 596 A.2d 269 (1991). In *Colloi, supra,* when a contractor's on-the-premises agent marked the area where excavation work was to be performed and exercised actual supervisory control over the subcontractor's employees, we held that there was sufficient evidence to meet prong two of the *McDonald* test. *See also Pastore v. Anjo Construction Co.,* 396 Pa.Super. 58, 578 A.2d 21 (1990) (contractor met prong two of statutory employer elements where contractor had the "responsibility and authority to direct, manage and/or operate the construction project where the injury occurred" and where contractor's foreman often sent help to rectify problems arising out of subcontractor's work, even where the subcontractor used its own foreman to oversee the subcontractor employees' work); *Pape v. Smith,* 227 Pa.Super. 80, 323 A.2d 856 (1974) (where

contractor exercised control over the premises by making such decisions as the location of the subcontractor's work and how extensive that work should be, second prong of *McDonald* test was met); *Davis, supra* (where contractor directed the work that was being done on the premises, it was held to have control of such premises for purposes of prong two); *McGrail v. W.C.A.B.,* 145 Pa.Commw. 595, 604 A.2d 1109 (1992) (where private electrician was under supervision of assistant director of public service for county, county was considered statutory employer because director, who told employee to remove wires and to place them on a plate, was considered to be in a supervisory position that satisfied prong two).

In this case, the record reveals that the Amtrak–Conduit contract mandated that Conduit supervise, direct the work, and be responsible for all construction means, methods, techniques, sequences, and procedures, and for coordinating all portions of the renovation work at 30th Street Station. In addition, the contract stated that Conduit was required to employ a superintendent to be in attendance at the project site during the progress of all work. In his testimony at trial, Conduit's job superintendent stated that his responsibilities consisted of: delegating the work areas for Ponns and Thomas employees; giving the employees punch lists; telling them exactly where they should be working; scheduling the work for all subcontractors according to where the concentration of contractors were located within the station; providing the only source of access to the station for workers, where the station entrances were secured by padlocks and chains installed by Conduit; taking headcounts of the workers at night; and making sure all subcontractors remained within their work-designated boundaries.

In interpreting prong two of *McDonald,* the Commonwealth Court has held that "the important requirement is that the person to be charged as a statutory employer must, in fact, occupy or control the premises, while the employee must be one whom that responsible occupant *has permitted to enter the*

*premises in furtherance of his regular business." Sears, Roebuck & Co. v. Fishel,* 6 Pa.Cmwlth. 384, 295 A.2d 345 (1972) (emphasis added). Testimony taken at a waiver hearing reveals that Conduit was responsible for controlling several aspects of the actual painting of the train station. A Conduit employee stated that he had to make sure that the subcontractors were following the "specs" and painting at the proper degree on the surface. In addition, Conduit controlled when the painters could paint, depending on the daily weather conditions. Specifically, if humidity was in the air, a Conduit employee would make the subcontractors stop painting.

The facts contained in the various parties' testimony, as well as the clear language found in the Amtrak–Conduit contract, compel us to find that prong two of the *McDonald* test was met in the instant case. Because the remaining prongs were not contested by either party or the trial court, we find that Conduit has fulfilled the elements required to hold it as Dougherty's statutory employer. *Timbrook, supra.* Because an employee who is covered by the provisions of the Worker's Compensation Act forfeits any rights to other forms of damages at law against his statutory employer, *McGrail, supra; Colloi, supra,* the only potential remedy for Dougherty is under the Worker's Compensation Act, 77 P.S. §§ 1–1603, *et seq.* Accordingly, we need not address the negligence claims which Conduit raises on appeal.

Order reversed.